**FIELDS PLASTICS OF TENNESSEE, INC., Appellant,**

v.

**Wilburn OWNBY, Appellee.**

Supreme Court of Tennessee.

Nov. 12, 1974.

Luther, Anderson, Ruth & Cleary, Chattanooga, for appellant.

Winston H. Prince, Jr., Cleveland, for appellee.

## OPINION

FONES, Chief Justice.

Employer, Fields Plastics of Tennessee, Inc., appeals from a workmen's compensation award of 25% permanent partial disability to the body as a whole, resulting from the occupational disease of contact dermatitis. After termination of his employment at Fields Plastics, on the recommendation of a dermatologist, Ownby worked for a roofing company for approximately three weeks and had a recurrence of contact dermatitis. He then worked for a chair company and had another recurrence of dermatitis.

The single assignment of error is directed to the imposition of liability for compensation upon Fields Plastics, when, appellant contends, the undisputed proof shows that Ownby was injuriously exposed to the hazards of contact dermatitis while in the employ of one or more subsequent employers. It is urged that, pursuant to

T.C.A. § 50–1106, only the last employer is liable.

T.C.A. § 50–1106 provides as follows:

*"Last employer liable—Extent of liability.*—When an employee has an occupational disease that is covered by the Workmen's Compensation Law, the employer in whose employment he was last injuriously exposed to the hazards of the disease, and the employer's insurance carrier, if any, at the time of the exposure, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier."

Appellant relies entirely upon the statute, citing no additional authority in support of its contention. Our independent research reveals that the key phrase in the statute, "last injuriously exposed", is more difficult of application than would appear on first reading. The problem of which carrier or employer is liable in cases involving successive exposure to occupational disease has given rise to three basic rules, statutorily and judicially declared, plus divergent interpretations thereof. Our Legislature has adopted what is known, alternately, as the Massachusetts-Michigan Rule, or the Last Injurious Exposure Rule.

The essential facts and medical evidence follows:

Ownby, age 57, worked in the compound room, where dyes were mixed, to make different colored plastics. He was also required to wash out large tanks or vats when a tank was emptied of one color dye to be replaced by another color. A mineral spirit or solvent, similar to a paint thinner, was used in washing out the tanks. According to Ownby, he was required to clean out one or two tanks almost every day. On a day preceding his first rash requiring medical treatment, he testified that he spent the entire day washing out a number of tanks. He testified that he was "in those mineral spirits all day that day." Dr. Thompson, the dermatologist who treated Ownby, testified, by deposition,

that Ownby had suffered a primary irritant at appellant's plant by the excessive use of and exposure to mineral spirits, which left Ownby's skin very susceptible to inflammatory agents.

Ownby's first episode of rash and swelling was treated by Dr. Lowe, in Cleveland. After three or four weeks of treatment, he returned to work, worked about three weeks, and had a second episode of rash and swelling. Appellant sent him to Dr. Free, another Cleveland physician, for treatment. After six visits, either Dr. Free or appellant referred him to Dr. Thompson, a dermatologist in Chattanooga. His first visit to Dr. Thompson was on April 17, 1972. He was treated on April 20 and May 2, on which date Dr. Thompson told him that he could return to work on May 8. However, on June 8, Ownby returned to Dr. Thompson and reported that he had worked for appellant about 2½ weeks when, on June 2, the rash and swelling flared up again. Dr. Thompson's examination on that occasion revealed that, in addition to the rash on his arms and hands and other parts of his body, his face was red and puffed. The record reflects that on or about that date, Dr. Thompson advised termination of Ownby's employment with appellant.

Ownby was treated by Dr. Thompson on five visits in June, two in July and three in August. During one of the August visits, Ownby reported that he had gone to work for a roofing company, applying hot tar. Dr. Thompson testified, on direct examination, that he did not think this was such a "hot idea" because, if Ownby got that stuff all over him, he would have to clean it off with mineral spirits or a similar organic solvent.

The thrust of appellant's contentions in this Court are that the hot tar in use during Ownby's short employment with the roofing company, and, subsequently, his work in a hot boiler room at the Cleveland chair company, were injurious exposures that relieve appellant of any liability under T.C.A. § 50–1106. With respect to injurious exposure at the roofing company and the chair company, Dr. Thompson testified, on cross-examination, as follows:

"Q. I think you indicated to us that there was some irritant that he was exposed to on this roofing job which caused his rash to break out?

A. No, I didn't mean to leave that impression. As a matter of fact, I'll read you my record on him here for the visit of August 17, 1972, I've got on here 'Went to work for roofing company this week.' Of course, you can check that otherwise, 'hot tar roofing but no rash yet.' I just said that I thought that was, sounded like about the worst thing he could do, I don't have any indication that it hurt him at all, but for some reason he quit the roofing company, I don't know why, whether he had a rash from it or not. But when I saw him he had only been working for them for a few days and nothing had happened so far.

Q. Doctor, is what you are telling us that contact dermatitis can just pop out at any time with any readditional re-exposure?

A. No, I didn't know I was saying that at all—

Q. (Interposing) So it would take— once the rash clears up and I think you indicated at one time it had cleared up, would there have to be some additional source of irritant that Mr. Ownby would be exposed to for the rash to pop up again?

A. Well, I think that's in general is a fair statement, although we don't always find any source of irritation, it may just pop up and we don't know why, but I think that's reasonably fair.

Q. Doctor, let me ask you this question hypothetically, if Mr. Ownby were to state that he had been working in a boiler room or furnace room of the Cleveland Chair Company around heat and steam and this type of stuff, could this possibly then be a source of irritation that would cause his contact dermatitis to develop into a rash again?

A. Well, I don't feel I can hardly answer it yea nor nay, what was he doing around the boiler room for example. I think if he was handling certain chemicals that they put in the boiler water for example to prevent rust and scale and all you might have some trouble from there, I don't know. But I just don't know how to answer that question.

Q. Well, would it be within the realm of possibility?

A. Well, I guess anything's possible, over the last 25 years I've decided most anything is possible."

The only other witness, in addition to Ownby and Dr. Thompson, was Dr. Patterson, a dermatologist, who examined Ownby on the 22nd of January, 1973, and found no evidence of contact dermatitis present at that time, except for some atrophic scars on his forearms. Dr. Patterson testified, in answer to hypothetical questions, that hot tar could or might have triggered an episode of contact dermatitis and that work in a hot boiler room at the chair company could or might have triggered an episode of contact dermatitis. Dr. Patterson also testified that, with the increased sensitivity in a patient such as Ownby, obviously acquired from the mineral spirits at appellant's plant, such a patient would, " . . . very frequently develop an allergy to detergents, and cleaners, and paints and many, many household products that any person is apt to handle in their daily lives." He also testified that such a person might develop a reaction to a deodorant soap containing hexachlorophene.

While the learned Chancellor made no express finding of fact, he observed at the conclusion of the proof that there was no question but that Ownby "crossed over the threshold as far as his sensitivity is concerned," and really developed the dermatitis while in the employ of Fields Plastics. He then rejected the applicability of T.C. A. § 50–1106 to this case, determined Ownby's permanent partial disability as 25%, and imposed liability on Fields Plastics. We interpret the action of the trial court as a finding that Ownby was not *injuriously exposed* to the hazards of the disease of contact dermatitis during the relatively short periods of his employment at the roofing company and the chair company, within the meaning and intent of said statute.

The proof reveals that substances, materials and conditions existed not only at the roofing company and chair company, but at Ownby's home that could or might involve him in a hazardous exposure. There was no direct proof that hot tar at the roofing company nor boiler room heat at the chair company actually caused flare-ups of his contact dermatitis during or following his brief interludes of employment at said companies. On the other hand, there is material evidence to support the lower court's implicit finding of no injurious exposure, within the meaning and intent of the statute, resulting from work at said subsequent employers.

We also observe that some states adhering to the Last Injurious Exposure Rule hold that when disability has once resulted from an occupational disease, a subsequent disability occurring under a different employer will be chargeable to the first employer if it is a recurrence of the first disability. The persistence of symptoms in the meantime and the failure to demonstrate an incident that can independently explain the second onset, are strong grounds for finding a mere recurrence.

See Larson's Workmen's Compensation Law, Sec. 95.26 and Lambert's Case, 325 Mass. 516, 91 N.E.2d 228 (1950). The evidence in this record supports a finding that if episodes of rash or contact dermatitis suffered by Ownby were in fact triggered by conditions at the roofing company or the chair company, such episodes were mere recurrences of the disease first acquired at appellant's plant.

The decree of the Chancery Court of Bradley County is affirmed and the cause is remanded for the enforcement thereof.

The costs are adjudged against the appellant.

COOPER, HENRY, BROCK and HARBISON, JJ., concur